Matthias, J.
The city challenges not only the finding and order of the commission wherein it approved the schedule filed by the gas company and thereby authorized it to charge and collect from each consumer of gas in the city of Lima a “readiness to serve charge of thirty-five cents per month,” but further challenges the jurisdiction of the commission to hear and determine the application of the gas company for the approval of that provision in its schedule of rates.
The question is thus squarely presented, whether, when a municipality passes an ordinance fixing the price which a gas company may charge its con *419 sutners within such municipality for gas for a period of three years thereafter, including a provision relative to meter rental charges, and the gas company, in writing, signifies its assent to and acceptance thereof, a contract is thereby entered into, full and complete and binding alike upon the municipality and upon the gas company; or whether the gas company during such period of three years covered by the ordinance and acceptance may exact a- “readiness to serve charge” in addition to the rate agreed upon, and whether, under the circumstances stated,-the Public Utilities Commission has any authority to validate such additional charge.
For many years a statute has been in force and operation in this state substantially as now set forth in Sections 3982 and 3983, General Code, authorizing the council of a municipality to regulate the price which electric lighting companies may charge for electric light or gas companies may charge for gas furnished to the citizens thereof, and containing the further provision that when such prices are so fixed for a period not exceeding ten years, and the company desiring to furnish electricity or gas assents thereto by written acceptance, such company shall in no event charge more for electric light or gas than the price so specified, and the council shall not require the company to furnish electricity or gas at a less price during the period of time agreed upon.
The constitution of the state, as amended in 1912, Section 4, Article XVIII, expressly authorizes municipalities to enter into contracts for, the *420 product or service of any public utility, and it must be conceded that the acceptance by the utility company of the price and terms prescribed by an ordinance of a municipality completes a contract between the municipality and the utility company which is now authorized by'the express terms of the constitution. This court held in the recent case of The Ohio River Power Co. v. City of Steubenville, 99 Ohio St., 421, that where the price of electric current for light and other purposes is fixed by ordinance, and the company duly files its written acceptance thereof, such ordinance and acceptance constitute a contract between the municipality and the company, binding on both parties during the term named in the ordinance.
It is elementary that the consideration expressed in a contract is presumed to be the full and entire consideration for the services therein agreed to be rendered, or for the material or commodity therein agreed to be furnished and delivered. In this case the record discloses that a gas rate ordinance passed July 20, 1915, was repealed at the time the ordinance here in question was passed; that such ordinance prescribed a rate of thirty-three cents per 1000 cubic feet, with a service charge of fifty cents,, which included the first 1000 cubic feet of gas used, or in other words, a minimum charge of fifty cents. That ordinance did not expire for three years, but it was repealed and a new ordinance granting the company a very material increase of rates was adopted upon the application of the company and for the purpose of meeting changed conditions. In the latter ordi *421 nance there is no provision for either a minimum charge or a “readiness.to .serve charge,” but there is an express-provision that “no meter rental rate shall be charged by any' company or companies furnishing natural gas under this ordinance.” There is clearly-.-manifested the agreed purpose and intent that all charges to be made for furnishing gas should be and w,ere merged in the rate stipuláted. i Any, futther charge exacted by the gas -company from'its consumers, no matter what such additional charge be denominated, whether it be called a charge or rate or financial device, would be contrary to and in direct violation of the express terms of the contract between the municipality and the gas company. The imposition of a “readiness to serve charge” in this instance, in addition to the agreed .rate, would result in charging every consumer, not fifty cents, the agreed rate, but eighty-five cents for the first 1000 cubic feet of gas.
The right to contract for'the product or service of a, public utility necessarily includes the right and authority to agree upon 'rates and charges. There can be no virtue in the right conferred upon municipalities to contract for the product or service of a public, utility company if it is powerless to agree upon the rate or price to be paid therefor, or, if, after such, agreement' is made, and during the period covered by the contract, its terms may be 'materially altered by the'Public Utilities Commission. Aside from the proposition that the right to make such contract is now conferred by constitutional provision, it is to be borne in mind that *422 the powers of the Public Utilities Commission are conferred by statute and it possesses no authority other than that thus vested in it. The City of Cincinnati v. The Public Utilities Commission, 96 Ohio St., 270, and The City of Washington v. The Public Utilities Commission, 99 Ohio St., 70.
The commission based its action upon the terms of Section 614-17, General Code, which provides in substance that “nothing in this act” shall be taken to prohibit the public utility from providing any other financial device that may be practicable or advantageous to the parties interested, provided the same be filed with and approved by the commission. But it must be observed that it is expressly provided by Section 614-47, General Code, that “this act,” by which is meant the public utilities act of which Section 614-17 is a part, shall not apply to prices fixed under Sections 3644, 3982 and 3983, General Code, except as provided in Sections 614 -44, 614-45 and 614-46, neither of which confers any authority whatever upon the Public Utilities Commission to act where the utility accepted the rate fixed by ordinance, except in the event of a complaint being filed by the electors of the municipality, as therein provided.
This court held in the Steubenville case, supra, that by the provisions of Section 614-47, General Code, such contracts are specifically exempted from the operation of the statutes of this state defining the powers and duties of the Public Utilities Commission in relation to the rate, price, charge, toll or rental that such public utility may charge, demand, exact or collect for any service rendered or *423 to be rendered by it. But even if the rates and charges stipulated in such contfacts were not specifically exempt from the consideration and action of the commission, the authority to enter into a contract, such as that under review, being now expressly conferred by' constitutional provision, any statute which purports to modify or restrict the power thus conferred would be in conflict therewith and must ,f all.
It follows that the exactioin of the “readiness to serve charge” incorporated in the schedule of rates filed by the gas company, in addition to the rate agreed upon, is violative of the terms of the contract, and that it cannot be validated by any order of the Public Utilities Commission. The order of the commission is therefore reversed.

Order reversed.

Nichols, C. J., Jones; Johnson, Wanamaker, Robinson, and Merrell, JJ., concur.